# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 50321 | **DATE** | 7/9/2013 |
| **CASE TITLE** | Koehn vs. Tobias, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, Evans's motion to dismiss is granted in full. There is no need, therefore, to resolve Evans's alternative argument that the alleged protected speech was made pursuant to his job duties as a public sector employee and was not protected speech under *Garcetti v. Cellabos*, 547 U.S. 410 (2006). Evans is dismissed from the lawsuit.

*/s/ Philip G. Reinhard*

■ [ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT - OPINION

Plaintiff Peter Koehn was a school psychologist employed by Harvard School District #50. Plaintiff disagreed with the District's decision to change special education services and placements because, he alleges, the changes were contrary to state and federal law. After alerting school district officials of his concerns, he was disciplined and eventually discharged from his position. Plaintiff filed this lawsuit pro se under 42 U.S.C. § 1983. He has since amended his pleading and raises two claims against defendants Lauri Tobias, District #50's superintendent and special education director; Margaret Segerston, principal of the junior high school at which plaintiff was employed; seven members of the District #50 School Board; and Julie Evans, a special education principal consultant employed by the Illinois State Board of Education (ISBE). ISBE was responsible for evaluating District #50's compliance with federal and state laws. Plaintiff alleges that the ISBE's duties included administering the due process system, providing mediation services, conducting compliance investigations, and approving policies and procedures. Evans oversaw a year-long remediation process for District #50's special education program.

Plaintiff brings a First Amendment retaliation claim under Count I. Under Count II, plaintiff claims that he was deprived of a fair hearing under the Fourteenth Amendment's Due Process Clause. Both Counts are alleged against all the defendants. Jurisdiction is proper under 28 U.S.C. § 1331. Segerston, Tobias, and the board members (District #50 defendants) have answered the amended complaint and asserted affirmative defenses. Evans now separately moves to dismiss the claims against her pursuant to Fed. R. Civ. P. 12(b)(6), contending, *inter alia*, that plaintiff fails to allege Evans's personal involvement in plaintiff's alleged constitutional deprivations.

Dismissal for failure to state a claim under Rule 12(b)(6) is proper when the allegations in a complaint, however true, could not raise a claim of entitlement to relief. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2012). The complaint must contain allegations that state a claim to relief that is facially plausible; that is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court construes all allegations as true and draws all reasonable inferences in plaintiff's favor. *Id.* The court construes pro se pleadings liberally. *Gomez v. Randle*, 680 F.3d 859, 864-65 (7th Cir. 2012).

Evans argues that plaintiff has not sufficiently alleged her personal involvement in the conduct underlying his claims. "For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *see also Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (holding that Section 1983 liability requires that the defendant caused or

participated in the constitutional violation); *Palmer v. Marion Cnty.*, 327 F.3d 588, 593-94 (7th Cir. 2003) (affirming summary judgment in favor of defendant county sheriff where plaintiff made no showing that the sheriff "was personally involved in the decision making allegedly amounting to violation of [the plaintiff's] constitutional rights.").

Plaintiff's amended complaint alleges the following. On September 10, 2010,[1] Segerston instructed plaintiff to come to her office. She asked plaintiff how special education staff members at the school felt about changes made to special education placements and services. Plaintiff told Segerston that he was concerned that the changes were contrary to numerous state and federal laws and violated the rights of disabled students. Segerston told plaintiff to "stop asking questions," and repeatedly asked plaintiff to name the staff members discussing these concerns. Plaintiff declined. Segerston then assured plaintiff that she would discuss the matter with Tobias.

On October 10th, plaintiff was informed in writing and orally that Segerston was ordering him to attend a disciplinary hearing regarding his professional performance. Segerston refused to provide plaintiff with her concerns prior to the hearing despite numerous entreaties from plaintiff. No complaints were made regarding plaintiff's professional performance prior to his September 10th meeting with Segerston.

Plaintiff informed Tobias in writing that Segerston repeatedly broke state and federal laws, and that many students would not receive special education services as a result. Tobias responded the same day in writing, acknowledging that plaintiff was leveling "pretty serious accusations." Plaintiff also learned from a fellow special education staff member that Segerston instructed other special education teachers a week before, "do not talk to Peter. Everything goes to Kristi." Kristi Austin was the special education liaison for the school.

Plaintiff wrote Tobias and informed her that Segerston initiated the disciplinary process against him in order to retaliate against plaintiff for calling attention to the allegedly illegal activities. Plaintiff again wrote Tobias and requested that Segerston recuse herself from his disciplinary hearing. Tobias did not respond to plaintiff's request.

Plaintiff wrote Evans informing her of Segerston's allegedly illegal activities and that Segerston was retaliating against him. Plaintiff then forwarded Evans a writing from another District #50 staff member corroborating the allegations made in plaintiff's previous letter. That same day, plaintiff received a letter from Tobias stating that Evans received plaintiff's ISBE complaint against Segerston. The document indicated that Evans was copied on the correspondence.

On October 20th, Tobias ordered plaintiff to take part in the disciplinary hearing. Meanwhile, Segerston and Tobias agreed to a disciplinary plan for plaintiff, though plaintiff claims that the decision to implement the plan was based on factual errors and misrepresentations. On October 28th, Tobias informed plaintiff in writing that she had performed a thorough and complete due diligence investigation of Segerston's actions and concluded that plaintiff's allegations were unfounded. Plaintiff subsequently learned that Tobias told two staff members who plaintiff listed as potential witnesses to "stay out of it. It's a personality conflict between Peter and Margaret."

On November 1st, plaintiff wrote to Tobias and Evans pointing out numerous deficiencies in Tobias's investigation. Plaintiff also referenced his filed complaint with Evans and the ISBE. On November 4th, plaintiff wrote a letter to the District #50 board members informing them that Segerston and Tobias were retaliating against him for informing Evans of the allegedly illegal activities. Evans was copied on the letter. Evans responded to plaintiff, stating that she had not received a complaint from him. Plaintiff's disciplinary hearing took place on November 10th. Plaintiff addressed the District #50 board and described Tobias's and Segerston's allegedly unlawful activities and their attempts to retaliate against him. Plaintiff also opined that Tobias and Segerston should not be able to participate in plaintiff's disciplinary process going forward due to their inability to be impartial. The board voted unanimously to implement the disciplinary plan. From mid-November 2010 through January 2011, Tobias and Segerston failed to respond to plaintiff's questions regarding how he was to adhere to the disciplinary plan.

On November 15th, Evans addressed approximately 15 members of District #50 special education staff. Plaintiff, Segerston and Tobias were also present at the meeting. Evans stated that she knew that Segerston's actions were unlawful but that she decided not to stop the violations. Plaintiff addressed the meeting asking how Tobias, Segerston and Evans could allow the violations to continue. Tobias shouted, "stop it!" She then blocked all discussion of the allegedly unlawful practices.

On January 31, 2011, the board voted to terminate plaintiff's employment with District #50. Plaintiff alleges that this allowed the illegal activities to continue. During the spring of 2011, Tobias submitted an allegedly false report as part of a federal investigation into discharge of plaintiff. In the document, Tobias claimed to have reviewed written sources and witnesses while investigating the events leading up to plaintiff's discipline and eventual discharge.

| STATEMENT - OPINION |
|---|

Attorneys overseeing the federal investigation began to investigate Tobias for submitting a false document.

During 2011 and 2012, Evans was the target of an investigation carried out by the office of the Illinois Attorney General for her role in the alleged cover up of illegal activities in District #50. The results of the investigation have not been examined by or offered to plaintiff despite plaintiff's written requests for a report. The attorney in charge of investigating Evans became general counsel at the ISBE within weeks of concluding the investigation into Evans's conduct. The attorney informed plaintiff that no written report on the investigation and what disciplinary measures were taken, if any, was available.

This court first considers Evans's contention that plaintiff fails to establish a cause of action against her under the First Amendment. For a public employee to establish a *prima facie* First Amendment retaliation claim, he must allege that (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) the speech was at least a motivating factor in the employer's action. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

Evans asserts that she was not plaintiff's employer, and that plaintiff therefore cannot satisfy the third element of a First Amendment retaliation cause of action. *See e.g., id.*; *Gunville v. Walker*, 583 F.3d 979, 983 (7th Cir. 2009); *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009). Plaintiff concedes that ISBE and, by extension Evans were not his employers, but disagrees with the notion that an employer must be involved in the deprivation. Plaintiff argues that it is merely coincidence that cases reciting the applicable standard for First Amendment retaliation claims require an *employer's* action. Plaintiff cites to *Springer v. Durflinger*, 518 F.3d 479 (7th Cir. 2008), in which parents of two high school students brought a First Amendment retaliation claim against employees of the students' school and school district. *Id.* at 480. The *Springer* plaintiffs needed to establish that the "the adverse actions were motivated at least in part as a response to the plaintiffs' protected speech." *Id.* at 483. Unlike the facts underlying plaintiff's claims here, the First Amendment claim in *Springer* did not arise within an employment context. An employer is liable for First Amendment retaliation when she "punishes an employee on account of speech." *Fairley*, 578 F.3d at 525. Plaintiff's First Amendment retaliation claim arises from his employer punishing him on account of his speech. The court thus construes his claim under the rubric of employment-related First Amendment retaliation. Plaintiff must therefore raise plausible allegations that Evans was his employer or responsible for the employment decision to terminate him for his claim against her to survive the instant motion. He has failed to do so.

Plaintiff nevertheless argues that Evans should be liable for failing to intervene in the District #50 defendants' retaliation against him. "If Evans had carried out the most basic parts of her own professional obligation with respect to District #50," plaintiff argues, "the District Defendants would have been placed in the highly untenable position of having to justify the disciplinary actions taken against the Plaintiff. . . . At the very least, Evans had to be aware that her inaction was enhancing the risk of the continuing violation of Plaintiff[] by the District Defendants." However, nothing in the complaint suggests that Evans retained any authority or influence over District #50's employment decisions. Evans's apparent lack of authority is consistent with well-established Illinois law that personnel decisions regarding school staff members are within local school boards' exclusive and nondelegable discretion. *See Midwest Cent. Educ. Ass'n, IEA-NEA v. Ill. Educ. Labor Relations Bd.*, 660 N.E.2d 151, 155 (Ill. App. 1995) ("The [Illinois] School Code grants the school board alone the duty to appoint teachers, and a broad power to terminate their employment . . . .") (citing *Ill. Educ. Ass'n Local Cmty. High Sch. Dist. 218 v. Bd. of Educ. of Sch. Dist. 218, Cook Cnty.*, 340 N.E.2d 7, 9 (Ill. App. 1975)). Plaintiff's allegations that Evans received his letters notifying her of the District #50 defendants' retaliation, indicated to plaintiff that she did not receive his ISBE complaint, and that Evans stated at the November 15th meeting that she decided not to take action against the District #50 defendants fail to plausibly suggest that Evans was under any duty to intervene on plaintiff's behalf. Further, in light of long-standing Illinois law establishing the primacy of school boards' discretion over personnel decisions, any inference that Evans could have successfully intervened is purely speculative. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) ("[F]actual allegations must be enough to raise a right to relief above the speculative level.").

Plaintiff lastly argues that Evans is liable under Count I as a supervisor. Section 1983 liability under the doctrine of *respondeat superior* is not available; a supervisor cannot be liable due only to the conduct of his subordinates. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). For a supervisor to be liable under Section 1983, she must be personally involved in the conduct. *Id.* In other words, the constitutional deprivation must occur with the supervisor's direction or consent, or if the supervisor "sets in motion a series of events that [he] knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Surita v. Hyde*, 665

| STATEMENT - OPINION |
|---|

F.3d 860, 875 (7th Cir. 2011).

    Plaintiff's argument fails because the amended complaint does not plausibly suggest that Evans or the ISBE retained any supervisory authority over District #50. Plaintiff raises no allegations showing that Evans, an employee of a state-level agency distinct from District #50, retained any supervisory authority over the District #50 defendants with respect to plaintiff's alleged retaliation. *Cf. Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869-71 (7th Cir. 2011) (holding that defendant village police chief was not liable under the Fourth Amendment for actions carried out by employees a separate government agency because he was not a supervisor within the agency). Furthermore, the amended complaint plainly reflects that the alleged scheme to retaliate against plaintiff was hatched by Segerston and possibly Tobias, with the acquiescence of the board. The District #50 defendants then carried out the alleged retaliation by disciplining and then discharging plaintiff. At best plaintiff's allegations that he notified Evans of the District #50 defendants' campaign to oust him from his position and Evans's addressing the November 4th meeting show that she was aware of the plan to discipline and discharge plaintiff. These allegations do not establish that Evans played any participatory role in plaintiff's alleged deprivation. *See Surita*, 665 F.3d at 875. Because plaintiff asserts no basis for holding Evans liable for his First Amendment retaliation claim, Evans's motion to dismiss as to Count I is granted.

    Next the court addresses Evans's motion to dismiss the procedural due process claim. To establish a procedural due process violation, a plaintiff must show that (1) he had a constitutionally protected property interest; (2) suffered a loss of that interest amounting to a deprivation; and (3) the deprivation was without due process of law. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005). Public employees are entitled to the protections of the due process clause where a constitutionally protected property interest exists. *Luellen v. City of E. Chi.*, 350 F.3d 604, 613 (7th Cir. 2003).

    As with his First Amendment claim, plaintiff fails to allege facts that allow the court to draw the reasonable inference that Evans caused or participated in the alleged deprivation of his due process rights. Plaintiff's disciplinary and termination hearings were initiated and carried out by the District #50 defendants. Even assuming that Evans possessed some oversight authority over District #50's practices, her mere awareness of the retaliation and failure to take action is not enough to establish her involvement in the alleged unfair employment hearings. Because plaintiff fails to allege that Evans caused or participated in the alleged due process violation, Evans's motion to dismiss as to Count II is dismissed.

    For the foregoing reasons, Evans's motion to dismiss is granted in full. There is no need, therefore, to resolve Evans's alternative argument that the alleged protected speech was made pursuant to his job duties as a public sector employee and was not protected speech under *Garcetti v. Cellabos*, 547 U.S. 410 (2006). Evans is dismissed from the lawsuit.

---

1. Unless otherwise noted, all events occurred in the year 2010.